**FEDERAL DEPOSIT INSURANCE CORPORATION, In Its Corporate Capacity, Plaintiff–Appellee,**

v.

**Paul J. CONDIT, et al., Defendants–Appellants.**

**No. 87–1927.**

United States Court of Appeals, Fifth Circuit.

Dec. 15, 1988.

---

Michael H. Carper, Lubbock, Tex., for defendants-appellants.

Harold H. Pigg, Brock, Morton & Pigg, Lubbock, Tex., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and JOLLY, Circuit Judges.

GOLDBERG, Circuit Judge:

The controversy before us involves familiar faces: a failed bank, the FDIC, and displeased debtors. Their features are common, and are framed for the most part by ordinary headwear. But we discern some marks of distinction in this case because the FDIC wears two hats—one as an insurer ("FDIC–Corporate") and one as a receiver ("FDIC–Receiver"). The debtors contend that the district court distorted the FDIC's countenance by rejecting their unseasonal fashion advice and recognizing only one hat. We disagree. Having failed to follow the trends in this litigation, the debtors cannot now complain that the district court's decision was not in vogue. We therefore affirm the judgment below.

## I. FACTS AND PROCEDURAL BACKGROUND.

Appellants, the Condits, obtained loans before 1983 from Mercantile National Bank of Dallas in consideration for, *inter alia*, promissory notes. On March 14, 1983, the Condits transferred their entire banking business to Moncor Bank of Hobbs, New Mexico ("Moncor"). In the process, they executed additional notes and guaranties. The Condits eventually defaulted on the notes. Moncor sued the Condits in July, 1985 to recover. Asserting numerous affirmative defenses and counterclaims, the Condits answered. The caption of their answer designated Moncor as "Moncor Bank, N.A., plaintiff." The counterclaims allege misbehavior by officials of the failed bank regarding the making of the notes at issue in this case. Many of the counterclaims also allege misbehavior by officials of the failed bank unrelated to the notes at issue in this case.[1] The counterclaims include tort claims and both state and federal statutory claims. Moncor responded to the affirmative defenses and counterclaims.

In August, 1985, the Comptroller of the Currency declared Moncor insolvent and appointed the Federal Deposit Insurance Corporation ("FDIC") Receiver as authorized by 12 U.S.C. Sections 191 and 1821(c). Pursuant to 12 U.S.C. Section 1823(c), FDIC–Receiver then transferred certain assets of Moncor, including the Condit notes, to FDIC–Corporate in return for monies from the FDIC insurance fund.

The FDIC moved to be substituted solely in its corporate capacity on March 18, 1986 because the Corporation held the Moncor

---

1. The Condits do not press claims against any individual officer or director of the failed bank in their pleadings.

assets at issue—the Condit notes. Although the district court, on the following day, provided the Condits with the opportunity to oppose the motion on substantive grounds, the Condits failed to respond. On March 31, 1986, the district court granted FDIC–Corporate's motion and substituted FDIC–Corporate as the only party adverse to the Condits in the action.

In October, 1987, FDIC–Corporate moved (1) to amend the complaint; (2) to amend its reply to the affirmative defenses and counterclaims; (3) to dismiss the counterclaims; and (4) for summary judgment. The Condits, on November 17, 1987, moved under F.R.Civ.P. 19 to compel the joinder of FDIC–Receiver, demonstrating their belief that FDIC–Corporate was the sole adverse party presently in the case.

On December 3, 1987, the district court, pursuant to 12 U.S.C. Section 1823(e) and *Langley v. Federal Deposit Insurance Corporation,* —— U.S. ——, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), granted FDIC–Corporate's motion for summary judgment and motion to dismiss the Condits' counterclaims. The district court also denied the Condits' motion to join FDIC–Receiver. Recognizing the clarity of *Langley* 's writing on the wall, the Condits press only one argument on appeal. They contend that the district court's judgment is fatally defective because the court erroneously denied their Rule 19 motion to join FDIC–Receiver in December, 1987.

## II. DISCUSSION.

The district court decided not to reintroduce FDIC–Receiver to the case in December, 1987, when FDIC–Corporate had already been substituted into the case twenty months earlier in March, 1986, without any substantive opposition by the Condits. In effect, the district court decided that enough was enough.

The Condits maintain that the district court abused its discretion by failing to join FDIC–Receiver in December, 1987 pursuant to the Condits' Rule 19 motion. As we shall discuss, Rule 19 is inapplicable in this case. Thus, because the district court's decision in these circumstances was essentially a discretionary one, we will reverse the court's determination only if we find that the court abused its discretion. The substantive effect of the Condits' litigation choices is that to the extent some of their counterclaims, if asserted now against FDIC–Receiver, may be meritorious, they may face limitations problems. But these potential problems are of their own making, not the district court's.

We first address the Condits' Rule 19 argument. The Condits make two contentions under F.R.Civ.P. 19(a) that FDIC–Receiver should have been joined by the district court. First, they claim that "complete relief cannot be accorded" between the Condits and FDIC–Corporate if FDIC–Receiver is not joined. F.R.Civ.P. 19(a)(1). Second, the Condits argue that FDIC–Receiver "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the [FDIC–Receiver's] absence may (i) as a practical matter impair or impede the [FDIC–Receiver's] ability to protect that interest or (ii) leave [the Condits] subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest." F.R.Civ.P. 19(a)(2).

The Condits' Rule 19(a)(2) argument is meritless. Pursuant to 12 U.S.C. Section 1823(c), FDIC–Corporate purchased from FDIC–Receiver the promissory notes upon which Moncor, the failed bank, sued the Condits. In return, FDIC–Receiver obtained insurance monies from the Corporation. Thus, FDIC–Receiver maintained no *direct* interest in the notes after the purchase and assumption transaction was consummated.[2] Although the Condits attack

2. FDIC–Corporate maintains that FDIC–Receiver claims no interest in this litigation. It appears that "collections by the FDIC in its corporate capacity are refunded to the FDIC as receiver, for the benefit of creditors, when collections exceed the amount the corporate FDIC paid in

the purchase and assumption transaction...." *Federal Deposit Insurance Corporation v. Wood,* 758 F.2d 156, 160 (6th Cir.1985). We find it unnecessary to decide whether this constitutes an "interest" in this context under Rule 19(a)(2) because we also hold that the Condits are not

the Section 1823(c) transaction as "manipulative," a "sham" and a "scheme," such a transfer of assets is routine and envisioned by the statutory scheme as one of the FDIC's options in dealing with the assets and liabilities of failed banks.[3] And to the extent that the Condits may press claims against FDIC–Receiver or any other entity, the Condits will not be subject to multiple or inconsistent obligations relating to the judgment on the notes in favor of FDIC–Corporate, payment of which will extinguish the Condit liabilities involved in this lawsuit.

For example, assuming that the Condits could successfully sue FDIC–Receiver for a tortious act of the failed bank unrelated to the making of the promissory notes at issue in this case, any judgment that FDIC–Receiver then paid to the Condits would leave the parties in a position no different from the one they would be in if such a tort claim had been adjudicated with FDIC–Receiver included in this case. The liabilities, in such a scenario, of the Condits to FDIC–Corporate, and of FDIC–Receiver to the Condits, would be distinct and would pose no problems of inconsistency or multiple obligations.

The Condits' claim that Rule 19(a)(1) requires joinder of FDIC–Receiver is similarly flawed. The district court accorded complete relief in the absence of FDIC–Receiver, rendering judgment (1) in favor of FDIC–Corporate on its claims regarding the promissory notes and (2) against the Condits on their counterclaims and defenses as asserted against FDIC–Corporate. The Condits concede that FDIC–Corporate is entitled to judgment, and is insulated from the Condits' defenses and counterclaims under 12 U.S.C. Section 1823(e) and *Langley,* 108 S.Ct. 396 (1987). The Condits may choose to file claims against FDIC–Receiver or any other party. Any such claims

against FDIC–Receiver, however, would not have been integral to this litigation as it stood at the end of 1987.

■ We now inspect more carefully the substance of the Condits' claim that the district court erred by failing to reintroduce FDIC–Receiver to the case in December, 1987. Although judgment against the Condits would be proper on appeal for erroneously moving under Rule 19, a goal of the Federal Rules of Civil Procedure is to discourage overly formal requirements of procedure. F.R.Civ.P. 1 (rules "shall be construed to determine the just ... determination of every action"); *see Farina v. Mission Investment Trust,* 615 F.2d 1068, 1074–75 (5th Cir.1980); *cf.* F.R.Civ.P. Rules 8(e)(1) and 8(f). We therefore consider the core of the Condits' argument, the inapplicability of Rule 19 notwithstanding.

The Condits had an opportunity to keep FDIC–Receiver in this case in March, 1986, and they let it slip away. This action was initiated by Moncor, the failed bank, in July, 1985. The Comptroller of the Currency named the FDIC as Receiver in August, 1985. At that point, FDIC–Receiver became a real party in interest adverse to the Condits. *See Farina v. Mission Investment Trust,* 615 F.2d at 1074–75 (FDIC's motion to remove treated as motion to intervene as a party); *see also Henry v. Independent American Savings Association,* 857 F.2d 995, 998 (5th Cir., 1988) (FSLIC "is a party within the contemplation of [12 U.S.C.] Section 1730(k)(1) when [it] is present as receiver...."); *North Mississippi Savings & Loan Association v. Hudspeth,* 756 F.2d 1096, 1100 (5th Cir. 1985) *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986); *First American Savings Bank v. Westside Federal Savings & Loan Association,* 639 F.Supp. 93, 96 (W.D.Wash.1986) ("even in the absence of formal pleadings, it is appar-

---

subject to multiple or inconsistent obligations in any event as a result of the district court's denial of their Rule 19 motion.

**3.** Congress' concern with the FDIC's role in regulating troubled banks has led it to expand the FDIC's powers significantly over time. *See, e.g.,* S.Rep. No. 97–536, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.

News 3054, 3099. Congress created a statutory scheme whereby two engines are at work. One may take on the load of the other in the face of mountainous terrain. In any event, the Condits improperly and obliquely question the validity of the purchase and assumption transaction for the first time in this court.

ent that FSLIC, appointed as receiver for Westside by the FHLBB, is already a party to the proceedings").[4]

The Condits' dissatisfaction, therefore, stems from their own failure to keep FDIC–Receiver in the case, and their late realization of their error. "A waiver is a voluntary and intentional relinquishment of a known right or conduct that warrants an inference of such a relinquishment." *Highlands Insurance Co. v. Allstate Ins. Co.,* 688 F.2d 398, 404 (5th Cir.1982) (citations omitted); *accord Van Den Broeke v. Bellanca Aircraft Corp.,* 576 F.2d 582, 584 (5th Cir.1978). FDIC–Receiver took possession of the Moncor assets and liabilities in August, 1985. As the cases cited in the preceding paragraph demonstrate, FDIC–Receiver was a real adverse party in interest at that time. FDIC–Corporate, which had purchased the Condit promissory notes from FDIC–Receiver, explicitly moved to be substituted in the case on March 18, 1986. *See* F.R.Civ.P. 25(c). The district court provided the Condits with ten days to oppose the substitution of FDIC in its corporate capacity as the party adverse to the Condits. The Condits would have been well within their rights to insist that FDIC–Receiver remain in the case. At that stage in the litigation, only the omniscient could have been certain of the merit of the Condits' counterclaims against either FDIC–Corporate, the owner of the notes at issue, or FDIC–Receiver.

Many of the counterclaims asserted by the Condits are unrelated to the notes. The Condits may attempt to refile these claims against FDIC–Receiver. If they face limitations problems, they may only blame themselves. They could have insisted in March, 1986 that FDIC–Corporate's motion for substitution be treated as a motion for joinder, with the FDIC–Receiver remaining as a counterdefendant on the claims not related to the notes at issue in this case.

In our adversarial system, we place many burdens of litigation on the parties.

Determining whom one is suing is one such burden that litigants face. The Condits' failure to define their adversaries clearly was not a burden in this case for the district court to shoulder. The Condits' Answer, which contained their affirmative defenses and *counterclaims,* designated in the caption the adverse party Moncor Bank as "Moncor Bank, N.A., plaintiff." The term "plaintiff" certainly is a term of art. The Condits used the term "plaintiff" to describe the adverse party who began the litigation, against whom the Condits asserted both affirmative defenses and *counterclaims.* When FDIC–Corporate moved to substitute as the "plaintiff," it adopted the Condits' meaning. It litigated this case as if it were the proper party to press its claim and contest both the defenses and all of the counterclaims against it—both compulsory and permissive. Both sides, then, functionally treated the designation of "plaintiff" to mean both plaintiff and counterdefendant throughout the litigation. If the Condits wanted to delineate the term more clearly, the burden was on them to do so as the adverse parties, not on the district court.

Thus, having failed to voice any opposition to the substitution in March, 1986, the proper time for the Condits to speak up, they cannot now complain that the district court committed reversible error by deciding not to place FDIC–Receiver's hat back into the ring at the tail end of the litigation in December, 1987. While we might have exercised our discretion differently at that point if we had been standing in the shoes of the district court, we cannot hold that the district judge *abused* his discretion in these circumstances.

As we noted above in discussing the inapplicability of Rule 19 in this case, there is no necessary reason for FDIC–Receiver to be in this litigation. The potential importance of FDIC–Receiver's presence results primarily from the limitations problems that the Condits may face if they decide to pursue any of their counterclaims against FDIC–Receiver in a new action. Potential limitations problems, however, are issues

---

**4.** The record reflects that at all relevant times in this action, the FDIC was the receiver of Moncor, the failed bank.

that result from the Condits' own litigation decisions. Assuming the Condits' counterclaims have merit, these procedural issues are questions to be resolved should they eventually present themselves. We merely review a discretionary determination of the district court that came at a late stage of a litigation. Our decision rests on the notion that the Condits were themselves responsible for failing to insist in March, 1986 that FDIC–Receiver remain in the case.[5]

## CONCLUSION

The FDIC in this case, attempting to collect on the obligations owed by the Condits to the failed bank, changed its headwear in March, 1986. Removing the ten-gallon hat it wore as Receiver, it donned the bowler of FDIC–Corporate. The Condits watched the change of attire silently. Because the district court did not err by deciding not to revisit the issue in December, 1987, its judgment is AFFIRMED.

---

5. We note as an aside that just as FDIC–Corporate was insulated from the defenses and counterclaims of the Condits under 12 U.S.C. Section 1823(e) and *Langley,* 108 S.Ct. 396 (1987), FDIC–Receiver would appear to have been entitled to similar protection concerning defenses and perhaps counterclaims that relate to the Condit notes at issue in this case. In *FDIC v. McClanahan,* 795 F.2d 512, 514 n. 1 (5th Cir.1986), we held that the doctrine enunciated in *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) may quench the force of defenses when the FDIC acts as a receiver. We noted that *D'Oench, Duhme,* which concerned the FDIC in its corporate capacity, itself relied on a case involving a *receiver* of a national bank. We stated that "there is no reason to suppose that Congress [in enacting 12 U.S.C. Section 1823(e)] intended to [preempt the common law rule of *D'Oench, Duhme* and] forbid the rule of estoppel from being applied when the FDIC sues as receiver of a failed bank." *Id.* (citations omitted).