**BULLION SERVICES, INC.,**
Plaintiff–Appellee,

v.

**VALLEY STATE BANK; Federal Deposit Insurance Corporation, as Receiver for Valley State Bank, Defendants–Appellants.**

No. 93–55912.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1995.

Decided March 20, 1995.

S. Alyssa Roberts, F.D.I.C., Washington, DC, for defendants-appellants.

Timothy Bowles and Robert A. Wiener, Bowles & Moxon, Hollywood, CA, for plaintiff-appellee.

Before: TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.

Opinion by Judge TROTT; Dissent by Judge T.G. NELSON.

TROTT, Circuit Judge:

## OVERVIEW

The Federal Deposit Insurance Corporation in its corporate capacity ("FDIC Corporate") appeals the district court order remanding to state court Bullion Services, Inc.'s ("BSI") action filed originally against FDIC only as receiver for Valley State Bank ("FDIC Receiver"). After BSI obtained a jury verdict in state court against FDIC Receiver, BSI was granted post verdict permission to amend its complaint to include FDIC Corporate. FDIC Corporate then at-

tempted to remove the case to federal district court pursuant to 12 U.S.C. § 1819(b)(2)(B). The district court remanded the action, however, concluding that FDIC Corporate had not been made a party to the litigation and, alternatively, that FDIC Receiver had waived the FDIC's right to removal. We have jurisdiction under 12 U.S.C. § 1819(b)(2)(C). We reverse, vacate the order and remand.

## BACKGROUND

On September 28, 1987, the FDIC was appointed receiver of Valley State Bank ("Bank") after the Bank was ordered closed. Prior to the closure, the Bank and BSI had been involved in thousands of precious metals transactions. In September 1990, BSI filed a complaint in state court against FDIC Receiver alleging, *inter alia*, a right to special deposits. The case was tried before a jury, and a verdict was returned in favor of BSI. BSI then filed a post verdict motion captioned Motion to Amend the Complaint to Conform to Proof asking the state court for permission to add FDIC Corporate to its complaint. The court granted the motion on February 11, 1993. Subsequently, the court entered judgment against both FDIC Receiver and FDIC Corporate.

FDIC Corporate removed the case to federal district court claiming removal was proper because the "FDIC in its Corporate Capacity was moved in this action by postverdict motion" and "[t]his matter [was] removed by FDIC in its Corporate Capacity within 90 days of being made a party." In support of its petition for removal, FDIC Corporate attached as exhibits all 88 state court pleadings. On May 3, 1994, the district court, *sua sponte*, issued an Order to Show Cause Re Remand ordering FDIC Corporate to establish the propriety and timeliness of removal by identifying the pleading that made FDIC Corporate a party to the litigation. The district court also indicated that under its reading of the removal statute, 12 U.S.C. § 1819(b)(2)(B), FDIC Receiver had waived the FDIC's right to removal by failing to remove the case within 90 days of the suit's initiation.

In response to the district court's order, FDIC Corporate argued that § 1819(b)(2)(B) applied to FDIC Corporate and FDIC Receiver independently. However, FDIC Corporate did not address the district court's request that it identify the pleading establishing its status as a party. On May 13, 1993, the district court ordered the case remanded. The district court stated that because "no pleading in the file indicates that the FDIC in its corporate capacity is a party ... the court finds that [FDIC Corporate] does not have the right to remove." Additionally, the district court concluded that 12 U.S.C. § 1819(b)(2)(B) did not apply independently to FDIC Receiver and FDIC Corporate and therefore the FDIC's petition for removal was untimely.

## STANDARD OF REVIEW

■ We review questions of statutory construction de novo. *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir.1992). "Moreover, removal of cases from the state courts to the federal court raise questions of federal subject matter jurisdiction which we review de novo." *Id.*

## DISCUSSION

### I

We consider first the district court's conclusion that FDIC Corporate had not been made a party to this litigation and thus could not remove the case. In its May 3, 1993 order to show cause, the district court stated it could not "ascertain from the file if or when the FDIC in its corporate capacity was 'made a party.'" In fact, the required showing was in FDIC Corporate's exhibits nos. 63, 64, 66, 76, 77, 81, and 85, attached to its petition for removal. Thus, the district court was wrong in its order of May 13, 1993, when it said, "no pleading in the file indicates that the FDIC in its corporate capacity is a party." Exhibit 76, BSI's second amended complaint (Amended by Interlineation to Conform to Proof at Trial), shows on page two that the FDIC in its corporate capacity was a party to the case when removal was sought. Exhibit 85, BSI's judgment, reveals that after the complaint was amended, judgment

was entered against both FDIC Receiver *and* FDIC Corporate.

Under the circumstances, the court erred when it used this mistaken ground as an alternate basis to deny the petition for removal. We note in this regard that the district court did not base its ruling on FDIC Corporate's failure to respond to its order to show cause, relying instead on its misapprehension of the file. Moreover, the district court also misunderstood the manner in which FDIC Corporate had become involved in the state case. This misapprehension appears in the district court's May 13, 1993 order on page two: "For some reason, the FDIC awaited until post-verdict to seek to become a party in its corporate capacity." FDIC Corporate never sought to become a party in the state action, rather it resisted BSI's attempt to bring it into the case.

In sum, the pleadings attached to the petition for removal demonstrate that despite FDIC Corporate's resistance, it was made a party to the present action. The only question remaining, therefore, is whether § 1819(b)(2)(B) allows FDIC Corporate and FDIC Receiver to exercise independently the right to remove a case to federal district court.

## II

We begin our analysis with the proposition that the scope of the FDIC's removal right is entirely a matter of congressional intent. *See McCarthy Western Constructors v. Phoenix Resort Corp.*, 951 F.2d 1137, 1140 (9th Cir.1991). When Congress amended the FDIC's enabling statute by enacting the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), it greatly expanded the FDIC's ability to remove cases to federal court. Section 1819(b)(2)(B) provides in relevant part that

the Corporation may, without bond or security, remove any action, suit, or proceed-

ing from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

This section confers several procedural advantages on the FDIC that go beyond the general removal authorization found in 28 U.S.C. §§ 1441–1452. *See, e.g., Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1211 (9th Cir.1994) (joining other circuits in holding that the FDIC may remove a case even after a state court has entered judgment); *Kirkbride v. Continental Casualty Co.*, 933 F.2d 729, 733 (9th Cir.1991) (stating that "Congress drafted the FIRREA removal provisions to supplement, not supplant, the general removal statute" (internal quotations omitted)); *FSLIC v. Frumenti Dev. Corp.*, 857 F.2d 665, 666–67 n. 1 (9th Cir.1988) (noting that the FDIC may remove an action under § 1819 even as a plaintiff); *FDIC v. S & I 85–1, Ltd.*, 22 F.3d 1070, 1074 (11th Cir.1994) (acknowledging that § 1819 establishes a removal time period of ninety days in a clear departure from thirty days allowed by the general removal statute). Moreover, except for the state law exception of § 1819(b)(2)(D) [1], any case in which the FDIC is a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A).

In light of these statutory provisions, we have held "that the grant of subject matter jurisdiction contained in FDIC's removal statute evidences Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts." *Kirkbride*, 933 F.2d at 731–32 (internal quotations omitted); *see also Lazuka v. FDIC*, 931 F.2d 1530, 1535 (11th Cir.1991) ("Congress used very strong language to afford the FDIC every possibility of having a federal forum within the limits of Article III."). With this

---

1. The state law exception prohibits the FDIC from removing any action

(i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;

(ii) which involves only the preclosing rights against the State insured depository institution, or obligations owning to, depositors, creditors, or stockholders by the State insured depository institution; and
(iii) in which only the interpretation of the law of such State is necessary.
12 U.S.C. § 1819(b)(2)(D).

statutory framework in mind, we address the parties' contentions.

Section 1819(b)(2)(B) allows the FDIC to remove a state action to a federal court within 90 days of *either* the date an action, suit, or proceeding is filed against the FDIC *or* the date FDIC is substituted as a party. *S & I 85–1, Ltd.,* 22 F.3d at 1074. BSI acknowledges that FDIC Corporate removed the case within 90 days of being made a party to the litigation, but contends that § 1819(b)(2)(B) applies to the FDIC as a single entity. Accordingly, BSI argues that FDIC's removal period began to run when BSI filed suit against FDIC Receiver, and that 90 days had long since past when FDIC Corporate sought to remove the present action. FDIC Corporate, on the other hand, asserts that § 1819(b)(2)(B) allows either FDIC Corporate or FDIC Receiver to remove a case when either entity is the subject of a suit or is made a party. Thus, under FDIC Corporate's interpretation of the statute, its removal of the instant action was timely.

Section 1819(b)(2)(B) provides that "the Corporation" may remove a case to federal court, but does not indicate whether "the Corporation" refers to the FDIC as a single entity or to FDIC Receiver and FDIC Corporate separately. BSI argues that when Congress has meant to draw a distinction between the two capacities of the FDIC, it has done so explicitly. Specifically, BSI points to § 1819(b)(2)(A), which creates federal jurisdiction in cases where "the Corporation, *in any capacity,* is a party." 12 U.S.C. § 1819(b)(2)(A) (emphasis added).

While we acknowledge that the use of more specific language in another section of the same statute may be indicative of congressional intent, we do not find the omission of "in any capacity" from § 1819(b)(2)(B) dispositive. The removal provision in question consistently has been construed as an attempt by Congress to expand, rather than restrict, the FDIC's ability to litigate in a federal forum. *See, e.g., Kirkbride,* 933 F.2d at 731–32; *FDIC v. Nichols,* 885 F.2d 633, 636 (9th Cir.1989). Under these circumstances, the ambiguity created by Congress's failure to use the "in any capacity" language

in § 1819(b)(2)(B) is not enough to confirm with certainty Congress's intent to limit the removal rights of FDIC Corporate and FDIC Receiver. *See S & I 85–1, Ltd.,* 22 F.3d at 1074 ("The only express limit Congress has placed on the scope of FDIC's removal powers is the state law exception of § 1819(b)(2)(D)."); *Lazuka,* 931 F.2d at 1538 (determining that § 1819 creates a rebuttable presumption that a case against the FDIC is removable). *But see Dalton v. FDIC,* 987 F.2d 1216, 1222 (5th Cir.1993) (concluding that the omission of "in any capacity" from § 1819(b)(2)(A) means that Congress intended for the removal provision to apply to the FDIC as a single entity).

When a statutory provision is unclear, we will "[d]ecide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved[,] and then [ ] [i]nterpret the words of the statute immediately in question so as to carry out the purpose as best it can." *United States v. Miguel,* 49 F.3d 505, 509 (9th Cir.1995) (quotation omitted). In the present case, we think " 'the answer is to be found by examining the purpose of the statute and the entirety of its text.' " *Id.* at 509 (brackets omitted) (quoting *United States v. Fausto,* 484 U.S. 439, 444, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988)).

Congress created the FDIC "to promote stability and restore and maintain confidence in the nation's banking system." *Nichols,* 885 F.2d at 636 (9th Cir.1989) (internal quotations omitted). To achieve these goals Congress created two distinct entities with two entirely different purposes. FDIC Corporate's primary responsibility is to insure bank deposits and to pay depositors when an insured bank fails. *Id.* Consequently, it administers the federal deposit insurance fund, a pool of assets used to guarantee the safety of federally insured deposits. FDIC Receiver, on the other hand, "act[s] as a receiver for an insolvent state bank ... possess[ing] all the rights, powers, and privileges granted by State law to a receiver of a State bank." *Id.* (internal quotations omitted). The assets it administers in this wholly different capacity are limited to the funds

making up the failed bank's estate. "Thus, under federal law, the FDIC is empowered to act in two entirely separate and distinct capacities in proceedings involving an insured state bank." *Id.* (internal quotations omitted).

■ Because FDIC Corporate and FDIC Receiver perform two different functions and protect wholly different interests, courts have been careful to keep the rights and liabilities of these two entities legally separate. *See, e.g., FDIC v. La Rambla Shopping Ctr., Inc.,* 791 F.2d 215, 218–21 (1st Cir.1986); *Trigo v. FDIC,* 847 F.2d 1499, 1502–03 (11th Cir.1988). Similarly, depending on the interests implicated by a bank failure, FDIC Corporate and FDIC Receiver may pursue different legal strategies to effectuate their respective statutory goals. *See, e.g., FDIC v. Condit,* 861 F.2d 853, 855–58 (5th Cir.1988). Given the distinct and separate interests of the two FDIC entities, for Congress not to have conferred on each the right to remove cases to a federal forum would be anomalous and surprising. And indeed, at least one provision of the FDIC's enabling act indicates that FDIC Corporate and FDIC Receiver possess separate removal rights: "In the event of any appealable judgment, the Corporation as conservator or receiver shall ... have all the rights and remedies available to ... the Corporation in its corporate capacity, including removal to Federal court...." 12 U.S.C. § 1821(d)(13)(B). Section 1821(d)(13)(B) implicitly embraces the notion that there may be situations when either FDIC Corporate or FDIC Receiver, in an effort to protect their disparate interests, will act under FIRREA's removal authorization independently. The instant case presents just such a situation.

The jury verdict against FDIC Receiver put BSI in the same position as other creditors of the failed Bank: a right to a pro-rata share of the Bank's assets. By adding FDIC Corporate as a party post-verdict, BSI was able to parlay the jury verdict into a judgment that guaranteed recovery of $100,000 in deposit insurance. Obviously, before being added as a party, FDIC Corporate lacked the ability to remove the case to federal court. And FDIC Receiver would have been

prescient to foresee the need to consider FDIC Corporate's separate and different interests when it formulated its trial strategy. In fact, the only opportunity for the FDIC to seek a federal forum in which to litigate BSI's right to insurance deposits occurred *after* FDIC *Corporate* was made a party. Until then, only the assets of the failed institution were on the table.

Congress's goal that claims asserted against the FDIC "be heard and decided by the federal courts," *Kirkbride,* 933 F.2d at 731–32 (internal quotations omitted), can be accomplished in this case only by construing § 1819(b)(2)(B) as providing FDIC Corporate and FDIC Receiver independent removal rights. We note that such an interpretation "does not give the words [of the statute in question] either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement." *Miguel,* 49 F.3d at 509 (quotation omitted). In fact, the interpretation sought by BSI would attach two diverse dogs to one wagging tail. We doubt Congress intended such a whimsical result.

We hold that § 1819(b)(2)(B) applies to FDIC Corporate and FDIC Receiver independently, and that FDIC Corporate's removal was timely. We recognize our interpretation of the statute is contrary to the Fifth Circuit's interpretation in *Dalton,* 987 F.2d at 1222. On the facts, that case is radically different from this one because there FDIC Corporate was not dragged into the state court litigation against its will. Rather, midway through the state case FDIC Receiver assigned its interest in the action to FDIC Corporate. The court was troubled by the use of a possibly tactical decision to change fora in midstream. *Id.* at 1221–22. There were good reasons for the court's concern and one *is* drawn toward a solution that would preclude forum manipulation by use of the simple expedient of an assignment. We respectfully conclude, however, that in seeking to deter manipulation the court in *Dalton* gave insufficient weight to the intent of Congress as embodied in the purposes of the FDIC's enabling statute.

### III

We REVERSE the district court's decision and VACATE the order remanding this case to state court. This case is REMANDED to the district court for further proceedings.

T.G. NELSON, Circuit Judge, dissenting:

In 1989, Congress added subsection (b) to 12 U.S.C. § 1819. The first sub-part of the new subsection provided: "The Corporation, in any capacity, shall be an agency of the United States, for purposes of section 1345 of title 28...." (Section 1345 gives the district courts original jurisdiction of suits by the United States and its officers and agencies.)

Congress went on to provide, in sub-part (2)(B) of the same new subsection (b), that the "Corporation may, without bond or security, remove any action, suit or proceeding from a State court...." I have difficulty attributing to it an intention to *sub silentio* authorize removal by the FDIC in both the capacities in which it operates. Obviously, Congress knew the FDIC would wear more than one hat, but it did not distinguish between them in authorizing "the Corporation" to remove cases from state courts.

The rule in the Fifth Circuit is that the FDIC gets only one chance to remove a case, under *Dalton v. FDIC,* 987 F.2d 1216, 1222 (1993):

> Even though the two capacities in which the FDIC functions are treated as two distinct legal entities for many purposes, they nonetheless remain merely distinct parts of a single entity, "the Corporation"; and the subject statute affords "the Corporation" but one opportunity to remove the case to federal court. Jurisdiction attaches and the case becomes subject to removal when "the Corporation" becomes involved in the litigation.

I am unable to agree that the words "the Corporation" in section 1819(b)(2)(B) really means "the Corporation, in its capacity as receiver as well as its corporate capacity." Nor do I believe that our interpretation of the removal statute is so compelling that we are justified in creating a split among the circuits on the question of the removal au-

thority of a federal agency with cases in all circuits.

Therefore, I respectfully dissent.