**FIRST WESTERN FEDERAL SAVINGS BANK, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. No. 87–5122.

United States District Court,
D. South Dakota, W.D.

Jan. 19, 1988.

---

Curtis S. Jensen, Gunderson, Farrar, Aldrich & DeMersseman, Rapid City, S.D., for plaintiff.

Lawrence E. Long, Martin, S.D., and Michael B. Ostrom, FDIC, Legal Div., Omaha, Neb., for defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

Plaintiff First Western Federal Savings Bank (First Western) filed this action on October 30, 1987, alleging the jurisdiction of this Court pursuant to 12 U.S.C. § 1819

(Fourth). Defendant Federal Deposit Insurance Corporation (FDIC) moved this Court to dismiss the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds of lack of subject matter jurisdiction.

## FACTS

The Elba State Bank, Elba, Nebraska, was declared insolvent and closed on September 18, 1985, by order of the Director of the Nebraska Department of Banking and Finance. Simultaneously and as permitted by Neb.Rev.Stat. § 8–197 (Reissue 1983) FDIC was appointed as the bank's receiver. Acceptance of the appointment by FDIC pursuant to 12 U.S.C. § 1821(e)[1] was filed on September 18, 1985.

On December 31, 1986, FDIC entered into a Loan Sale Agreement with First Western. Under the terms of the agreement FDIC was to sell to First Western a package of loans from various failed banks in Nebraska and Iowa. The Loan Sale Agreement was signed on behalf of both parties, effectuating the transfer of 110 different loans from 17 failed banks. Nine of the loans were from the failed Elba State Bank, one of which is the subject of this action (Dirks loan).

With respect to FDIC, the agreement was signed by its Assistant Bank Liquidations Specialist-in-Charge as follows:

"FDIC"

By: /s/ _____

Title: Assistant Bank Liquidation Specialist-in-Charge

Federal Deposit Insurance Corporation in its corporate capacity as liquidator or reciever [sic] for the banks listed in exhibit A

Date: January 2, 1987 _____

Paragraph 10 of the Loan Sale Agreement provided *inter alia* that all of the assets sold by FDIC to First Western

1. Whenever any insured State bank (except a District bank) or any insured branch (other than a Federal branch) of a foreign bank shall have been closed by action of its board of directors or by the authority having supervision of such bank, as the case may be, on account of inability to meet the demands of its depositors, the Corporation [FDIC] shall accept appointment as receiver thereof, if such appointment is tendered by the authority having supervision of such bank and is authorized or permitted by State law. With respect to any such insured State bank or insured branch of a foreign bank, the Corporation as such receiver shall possess all the rights, powers and privileges granted by State law to a receiver of a State bank.

would be "sold and transferred without recourse and without any warranties whatsoever as to their enforceability, collectibility, documentation, or freedom from liens or encumbrances, in whole or in part." However, FDIC did "warrant the genuineness of all instruments evidencing assets transferred and does hereby grant to the buyer [First Western] the right to resell to the seller [FDIC] any and all assets which, within a period of one year after the sale date, shall be discovered to be evidenced by forged, stolen, or fictitious instruments."

The loans sold pursuant to the agreement were to be delivered to First Western after having been endorsed by FDIC. Paragraph 9 of the Loan Sale Agreement provided for the form of endorsement, to-wit: "FDIC shall assign and transfer the entire interest of FDIC in the Loans identified in the Bill of Sale by endorsement of the promissory notes to Buyer in the following form:

All right, title and interest of the undersigned is hereby assigned to
without recourse.

By: Laura C. Austin
Title: Assistant Bank Liquidation Specialist-in-Charge
Federal Deposit Insurance Corporation in its corporate capacity as liquidator or reciever [sic] for the banks listed in exhibit A."

The Dirks note was a promissory note executed by Delmer C. Dirks, dated February 10, 1984, in the amount of $84,882. Plaintiff's complaint alleges that the Dirks note was in fact a fictitious note actually made to Robert Short, president of the Elba State Bank, as a part of a scheme by which Short obtained money from the Elba State Bank by means of false, fraudulent, and bogus loan transactions. Plaintiff also alleges that prior to the execution of the Loan Sale Agreement, Dirks had advised the FBI of the note's fraudulent nature and that FDIC had also been advised. First Western brings this action against FDIC for breach of contract by reason of the failure of FDIC to repurchase the loan pursuant to its warranty.

## ISSUE

First Western asserts that FDIC is in breach of the Loan Sale Agreement's warranty provision.[2] It seeks to invoke this Court's jurisdiction pursuant to 12 U.S.C. § 1819 (Fourth) which provides in pertinent part:

[T]he Corporation [FDIC] shall become a body corporate and as such shall have power. . . .

Fourth. To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such actions, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States. No attachment or execution shall be issued against the Corporation or its property before final judgment in any suit, action, or proceeding in any State, county, municipal, or United States court. The Board of Directors shall designate an agent upon whom service of process may be made in any

---

2. All assets sold to the Buyer under this Agreement are, except as otherwise set forth in this Agreement, sold and transferred without recourse and without any warranties whatsoever as to their enforceability, collectibility, documentation, or freedom from liens or encumbrances, in whole or in part. The Seller does warrant the genuineness of all instruments evidencing assets transferred and does hereby grant to the Buyer the right to resell to the Seller any and all assets which, within a period of one year after the Sale Date, shall be discovered to be evidenced by forged, stolen, or fictitious instruments. . . .

State, Territory, or jurisdiction in which any insured bank is located. (Proviso underlined.)

The question presented by Defendant's motion is whether this Court has jurisdiction over Plaintiff's claim. The resolution of the issue involves the determination of whether the FDIC is a party to the action in its capacity as receiver and whether the action involves only the rights or obligations of depositors, creditors, or stockholders of the Elba State Bank. In such case the status of FDIC would fall within the proviso and this Court would not have jurisdiction. If, however, FDIC was acting in its corporate capacity, the proviso would not apply and this Court has jurisdiction under the statute.

For the reasons set forth in this opinion, the Court finds that FDIC was acting in its corporate capacity and accordingly the motion to dismiss under Fed.R.Civ.P. 12(b)(1) is denied.

## DISCUSSION

■ FDIC is a federal agency which insures bank deposits. As an insurer, one duty of the FDIC is to pay the depositors of a failed bank. This duty can be accomplished in several ways.

First, it may wait until the bank actually fails, liquidate the assets, and pay the depositors (making up any shortfall out of its own funds). 12 U.S.C. § 1821(d)-(g). Second, it may organize a Deposit Insurance National Bank to assume the insured deposit liabilities of the failing bank. 12 U.S.C. § 1821(h). Third, it may render direct financial assistance to keep open or reopen the distressed bank by either making loans, deposits, or contributions to; purchasing assets or securities of; or assuming liabilities of the failing bank. 12 U.S.C. § 1823(c)(1). Fourth, it may enter into a 'Purchase and Assumption' arrangement with the bank. 12 U.S.C. § 1823(c)(2).

*FDIC v. La Rambla Shopping Center,* 791 F.2d 215, 218 (1st Cir.1986) citing *Gunter v. Hutcheson,* 674 F.2d 862, 865–66 (11th Cir.) *cert. denied* 459 U.S. 826, 103 S.Ct. 60,

74 L.Ed.2d 63 (1982) (other citations omitted).

A "purchase and assumption" transaction involves an arrangement whereby FDIC seeks another bank to "purchase" the failed bank and reopen it without interrupting bank operations and with no loss to the depositors. *Id.* A purchase and assumption involves three entities: the receiver of the failed bank, the purchasing bank, and FDIC as insuror. *Id.* In most cases, FDIC is appointed receiver by the appropriate banking authority and thus acts in two separate capacities: as receiver and as a corporate insurer. *Id.*

As a receiver of the insolvent bank, the FDIC becomes a representative of that bank and is required to marshal the assets of that bank for its shareholders and creditors. In its corporate capacity, FDIC functions separately as a federal insurer of bank deposits. Congress has provided for these functions and each is governed by statute. *See* 12 U.S.C. § 1823(c), (d).

Following the close of the Elba State Bank, FDIC was unable to effectuate a purchase and assumption transaction pursuant to 12 U.S.C. § 1823(c)(2)(A). FDIC acquired the assets in its receivership capacity which would initially indicate that it was not acting in its corporate capacity and therefore, it was a "proviso party." Hence, this Court would have no jurisdiction. The problem with that conclusion, however, is that under the authorities hereinafter cited, FDIC can operate simultaneously as a receiver and in its corporate capacity. The Court finds that although FDIC acted in its "receiver" capacity initially, it acted in its "corporate" capacity in the execution of the loan agreement with First Western.

Under 12 U.S.C. § 1819 (Fourth), jurisdiction in suits in law or equity in which FDIC is a party does not exist in the federal courts when:

1. FDIC is a party to the suit in its capacity as a receiver of a state bank, and

2. The suit involves only the rights or obligations of depositors, creditors, stockholders in such state bank under state law.

If these two paragraphs are not met, this Court would have jurisdiction of these causes of action.

In *Freeling v. Sebring*, 296 F.2d 244, 245 (10th Cir.1961), the Court noted:

Congress has thus authorized the FDIC to act simultaneously in the dual capacity as federal insurer and as a state receiver and has discerningly provided for federal jurisdiction of claims against it as federal insurer, while denying federal jurisdiction over claims arising out of its activities as a state agent.

The *Freeling* construction has been adopted by other circuits which have addressed this question. *See e.g., In re F & T Contractors, Inc.*, 718 F.2d 171, 177 (6th Cir.1983); *FDIC v. de Jesus Velez*, 678 F.2d 371, 374 (1st Cir.1982); *FDIC v. Sumner Financial Corp.*, 602 F.2d 670, 679–80 (5th Cir.1979). Neither counsel nor this Court has been able to find similar case authority in this circuit.

■ In this case no "purchase and assumption" was ever effectuated as between FDIC, the Elba State Bank, and a third party bank pursuant to 12 U.S.C. § 1823(c)(2). In addition, no agreement has been produced by either party to show that FDIC as receiver sold to FDIC as corporation any notes of the Elba State Bank. This Court notes that such agreements are often dispositive of the determination of the capacity prong of the proviso language of section 1819 (Fourth). *See e.g., FDIC v. Godshall*, 558 F.2d 220 (4th Cir.1977) (court concluded that the FDIC had acted in its corporate capacity by an analysis of the terms of a purchase agreement whereby FDIC in its corporate capacity bought a note from FDIC as receiver of a failed bank). However, the distinction between the FDIC as receiver and the FDIC as corporation is oftentimes subtle and absent such an agreement, the Court must look to the facts and circumstances surrounding the actions of the parties. What, then, are the facts and circumstances of this transaction?

The facts are that the loan agreement between FDIC and First Western was a separate agreement involving the assets of numerous loans from different banks. The Dirks loan was a small part of the contract. The contract terms do not involve only the rights of the Elba State Bank. FDIC is sued in its corporate capacity and not as a receiver. The Loan Sale Agreement itself referred to FDIC as a corporate party. FDIC signed the agreement as a corporate party. A reading of the four corners of the document indicates it was acting in its corporate capacity.

Under the facts presented, FDIC negotiated an agreement with First Western whereby FDIC sold 110 loans to First Western, including certain warranties. Some of the loans sold had been acquired by FDIC as a result of a purchase and assumption transaction. Other loans (including the loans of the Elba State Bank) had been acquired by the FDIC acting as a receiver.

Under the law, the FDIC is authorized to purchase and sell the assets of a failed bank in both its capacities. Most oftentimes a purchase and assumption is effectuated because (1) the depositors receive their money quickly; (2) many of the failed banks' banking operations may continue without interruption; and (3) it places the "bad assets" in the hands of the FDIC as a corporation which is skilled at recovering the highest potential value for those assets. *FDIC v. La Rambla Shopping Center*, 791 F.2d at 218. In addition, the FDIC as receiver may also purchase and liquidate or sell any part of the assets of a closed bank. However, such a transaction must be made with the approval of a court of competent jurisdiction. 12 U.S.C. § 1823(d) provides in part:

[T]he corporation, in its discretion, may make loans on the security of or may purchase and liquidate or sell any part of the assets of an insured bank which is now or may hereafter be closed on account of inability to meet the demands of its depositors, but in any case in which the corporation is acting as receiver of a closed insured bank, no such loan or purchase shall be made without the approval of a court of competent jurisdiction.

In this case a purchase and assumption was never effectuated because a willing bank could not be found to assume the assets of the Elba State Bank. The circumstances of the Loan Sale Agreement reflect that in order to replenish its coffers, FDIC as a corporation, chose to sell a package of 110 loans to First Western. Nine of the loans were loans of the Elba State Bank. The facts indicate that rather than acting in its capacity as receiver which would have required court approval of such sales by courts of competent jurisdiction, the FDIC instead chose to sell an entire package of loans in one transaction. In fact, the very terms of the Loan Sale Agreement provided that the FDIC would assign its interest in the loans without recourse by an endorsement which specifically referred to FDIC endorsing the loans "in its corporate capacity as liquidator or reciever [sic] for the bank listed in Exhibit A." In addition, the agreement was signed by FDIC specifically in its corporate capacity.

This Court finds that FDIC could have chosen to sell the notes of the Elba State Bank as its receiver. Instead, it chose a more expeditious means to unload a large volume of failed bank loans. The terms of the Loan Sale Agreement controvert any argument that FDIC was acting as receiver. The agreement warranted that the loans would be of a certain quality and that they were being sold by FDIC in its corporate capacity. Because First Western alleges that FDIC is in breach of its warranty, it has sued FDIC in its corporate capacity. Both the form and the substance of the parties' dealings indicate that FDIC chose to act in its corporate capacity.

The Defendant cites the cases of *Gross v. FDIC*, 613 F.Supp. 79 (D.C.Kan.1985) and *FDIC v. National Surety Co.*, 345 F.Supp. 885 (S.D.Iowa 1972) as controlling authority on the issue of subject matter jurisdiction. This Court finds both cases clearly distinguishable on their facts. In *Gross*, the plaintiffs were husband and wife who had deposited funds in a state bank which had failed and whose assets were held by the FDIC as receiver. 613 F.Supp. at 81. Although the FDIC as receiver had arranged for the sale of certain of the bank's assets to FDIC in its corporate capacity, the court dismissed the plaintiffs' claim that the FDIC had wrongfully "frozen" their accounts because the lawsuit involved only a claim brought by the depositor of the failed bank against the FDIC as a receiver. *Id.* The court in *Gross* looked no further than the pleadings to determine that the exception provision of section 1819 (Fourth) applied. The plaintiffs' complaint charged that the FDIC "has been appointed, and is acting, as a receiver of the bank" and the FDIC's answer admitted the allegation. *Id.* at 82.

In *National Surety*, FDIC as receiver brought suit to enforce the rights of a bank's depositors, creditors, and stockholders against a surety company who had bonded the employees of the failed bank. Although the court in *National Surety* found that FDIC might become the ultimate recipient of a large portion of any possible recovery in the suit, jurisdiction in federal court was inappropriate because the FDIC was "asserting claims of depositors, stockholders, and the state bank as receiver." 345 F.Supp. at 888.

In both *Gross* and *National Surety*, the FDIC was being sued or was seeking a remedy solely in its capacity as a receiver. In addition, both cases involved only the rights of the failed bank's depositors, stockholders, or creditors. In contrast, the facts in the present case involved the breach of a loan sale agreement involving obligations of FDIC in its corporate capacity and the Plaintiff First Western—clearly a party which is not a depositor, stockholder, or creditor of the Elba State Bank.

■ The Defendant argues that because a purchase and assumption was never effectuated, the FDIC acted at all times in its capacity as receiver. This argument misses the point. This Court accepts the fact that a purchase and assumption may never have been effectuated with respect to the Elba State Bank. Nevertheless, over a period of time FDIC acquired over 110 notes written on failed banks, one of which was the Dirks note. It chose to treat the Dirks loan as a corporate asset of FDIC and accordingly was not acting as a receiver. It accordingly is not a "proviso party" under 12 U.S.C. § 1819 (Fourth).

The second criteria which must be shown to defeat this Court's jurisdiction is proof that Plaintiff's action involves only the rights or obligations of the Elba State Bank and its depositors, creditors, or stockholders under state law. This Court finds that the merits of this case surround not only the rights or obligations of Elba State Bank and its depositors, creditors or stockholders, but involves a contract dispute between FDIC and First Western. The rights and obligations of Elba State Bank and its depositors, creditors, and stockholders are no more a part of the FDIC–First Western contract than are the other 16 failed banks and their depositors, creditors, and stockholders. In short, Elba State Bank is not the only bank affected by the contract between FDIC and First Western. Furthermore, the depositors, creditors, and stockholders of First Western are involved. It accordingly does not involve *"only* the rights or obligations of depositors, creditors, stockholders and such state bank." 12 U.S.C. § 1819 (Fourth).

Because Plaintiff's allegations do not fall within the exception provisions of 12 U.S.C. § 1819 (Fourth), it is hereby

ORDERED that Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is hereby denied.