**MILL CREEK GROUP, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

No. 3:95 CV 1498 (TPS).

United States District Court, D. Connecticut.

April 10, 2001.

---

Jane S. Ancona, Benjamin Ancona, Jr., Ancona & Ancona, West Hartford, CT, for plaintiff.

Heena Kapadia, Carmody & Torrance, New Haven, CT, Philip E. Masquelette, FDIC, Legal Division, East Hartford, CT, Charlotte M. Kaplow, FDIC, Washington, DC, for defendants.

### RULING ON MOTION TO RECONSIDER

SMITH, United States Magistrate Judge.

The plaintiff, Mill Creek Group, Inc., brought this action against the Federal Deposit Insurance Corporation ("FDIC") to recover damages allegedly resulting from its purchase of a package of distressed loans from the FDIC as Receiver for National Industrial Bank on September 13, 1993. On September 11, 2000, the court issued a ruling on defendant's motion to dismiss (**Dkt. # 117**), granting it in its entirety. On September 13, 2000, plaintiff moved for reconsideration (**Dkt. # 119**). Having entertained plaintiff's motion to reconsider, the court adheres to the view that plaintiff's claims · were properly dismissed. Therefore, the motion to reconsider (**Dkt. # 119**) is **GRANTED**; but, for the following reasons, plaintiff's request that the court's decision be set aside is **DENIED**.

### I. PROCEDURAL POSTURE

This case has an unusual procedural posture. The defendant first moved to dismiss the complaint on December 11, 1997. Plaintiff responded to this motion by petitioning the court for additional discovery and by seeking an extension of time in which to file opposition papers. The

court denied the motion to dismiss without prejudice, and reopened discovery on May 13, 1998. Rancorous discovery continued until November 29, 1999, when defendant re-filed its motion to dismiss.[1]

The plaintiff responded to this renewed motion by filing a *motion to dismiss defendant's motion to dismiss,* and seeking an extension of time in which to file opposition papers until 30 days from a decision on its motion to dismiss the motion to dismiss. On September 11, 2000, the court denied plaintiff's motion to dismiss and granted defendant's motion. The plaintiff thereupon asserted that the court had unfairly granted defendant's motion by not allowing plaintiff the 30 days it had requested to file papers in opposition to defendant's motion. To rectify this, the court has entertained a motion to reconsider, thus providing plaintiff with a full and fair opportunity for the presentation of whatever additional arguments and evidence it believes should be considered by the court.

## II. THE FACTS

Certain key facts are undisputed or inescapable. In May of 1993, the defendant placed an advertisement in the Wall Street Journal soliciting bids for the sale of loans. The plaintiff answered the solicitation, and a bid package was sent to it by defendant on July 27, 1993. Certain loan packages and their sub-packages were identified in the bid package. The plaintiff decided to submit a bid on the sub-package identified as SB–93–21(C).

Shortly after the original solicitation, the package labeled SB–93–21(C) consisted of five distressed loans that plaintiff valued at $479,192.00. On July 29, 1993, plaintiff submitted a bid of $63,732.67, or 13.3% of

the book value of the loans contained therein, on loan package SB–93–21(C). On August 2, 1993, the FDIC accepted plaintiff's bid to purchase SB–93–21(C).

Shortly after being told that its bid had been accepted, the plaintiff was informed by Mr. Robert Meador, an FDIC Asset Marketing Supervisor, that there was a problem with the loan package. Apparently, despite the fact that it was listed as part of the package plaintiff bid to purchase, the FDIC settled an unsecured note with an obligation of $100,000, of which Paul Romanelli was the maker, and Norman Soep was the guarantor, (the "Romanelli/Soep loan") for $25,000 on August 5, 1993.

In response to the withdrawal of the Romanelli/Soep loan from the package, Mill Creek brokered a compromise with the FDIC. On August 11, 1993, plaintiff authored a letter to the FDIC confirming the terms of the compromise: that the FDIC would recommend for approval that the Romanelli/Soep loan would be removed entirely from SB–93–21(C), and that plaintiff would purchase the remaining four assets, valued at $379,193.00, for $38,732.67. Final approval for the sale was in fact obtained on September 7, 1993.

The parties closed the transaction on September 13, 1993, and executed a written Loan Sale Agreement. The Loan Sale Agreement reflected the terms agreed upon in the August 11 letter, and identified the plaintiff Mill Creek Group, Inc., as the buyer of the loan obligations, and the FDIC "in its receivership capacity" as the seller. (Kathleen Bowen Aff., Dkt. # 111, ¶ 4 and Ex. 1, Att. 5 at 23). The Bill of Sale identifies the seller as the FDIC in its receivership capacity (*Id.,* ¶ 4 and Ex. 1, Att. 2 at 18A).

---

1. The defendant has substantially complied with its discovery obligations in this case. Plaintiff has had ample opportunity to conduct appropriate discovery.

Unfortunately, after the closing the parties became aware of yet another problem involving SB–93–21(C). One of the assets included in the package was a note, with a maker named Gene Zurolo, that was partially secured by a second lien on a piece of real property in Madison, Connecticut ("Zurolo lien"). On August 24, 1993, after consulting with the holder of the first lien regarding a private sale of the property in question, the FDIC approved a release of the Zurolo lien in exchange for $750.00 of the sale proceeds. Plaintiff did not learn of the release until after it had already purchased the note, and it obtained the funds from the FDIC thereafter.

### III. THE CLAIMS

Plaintiff then filed this lawsuit, which charges the FDIC with misrepresenting the contents of the package to the detriment of the plaintiff, and seeks to recover the full value of the package as originally offered. Specifically, plaintiff challenges the FDIC's offering five loans for sale, and then removing one loan entirely, and a lien securing another loan, from the package prior to the closing of the transaction, as a "bait and switch" transaction. At the root of plaintiff's lawsuit is the concept that the FDIC had an obligation to communicate accurate information, and therefore must compensate the plaintiff for its failure to do so.[2]

In the complaint, plaintiff asserts various sources for this core obligation, and alleges the following causes of action against the FDIC in its corporate capacity: (1) breach of contract (First Count); (2)

breach of the covenant of good faith and fair dealing (Second Count); (3) breach of a fiduciary duty (Third Count); (4) fraud, intentional misrepresentation, and collusion (Fourth Count); (5) negligent misrepresentation (Fifth Count); (6) detrimental reliance (Sixth Count); (7) deprivation of property without due process of law (Seventh Count), and (8) fraud under the New Jersey Consumer Fraud Act, New Jersey Statutes Annotated § 56:8–1 *et seq.* (Eleventh Count).[3]

Plaintiff's claims may be viewed as either tort claims or non-tort claims. Counts three, four, five, and eleven of the complaint clearly appear to sound in tort. Counts two and six, while perhaps less clearly sounding in tort, have alleged wrong-doing by virtue of interference with plaintiff's putative contractual rights. Only count one, the breach of contract claim, is non-tortious in nature. The defendant moved to dismiss all of the foregoing claims under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. Defendant contends that all of the foregoing claims must be dismissed for lack of subject-matter jurisdiction, on grounds of sovereign immunity, or because they fail to state a claim on which relief can be granted.

### IV. STANDARDS FOR DISMISSAL

Two different standards govern the court's analysis. First, Rule 12(b)(1) of the Federal Rules of Civil Procedure is the appropriate device to assert a "lack of jurisdiction over the subject matter."

---

**2.** Stressing the tortious nature of its claims, Mill Creek makes the argument that "there can be no dispute that plaintiff executed the Agreement [with the Receiver] in reliance on the defendant's misrepresentation, intentional or mistaken, that FDIC–Receiver owned the assets which were the subject of the contract and that defendant [FDIC–Corporate] knew

the plaintiff would rely on the misrepresentations." (Dkt # 121 at 16–17). *But see* 28 U.S.C. §§ 2679(a) and 2680.

**3.** The Eighth, Ninth, and Tenth Counts, which were directed to an individual named Norman Soep, were voluntarily withdrawn by plaintiff (Dkt # 25).

Fed. R. Civ. Pro. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.2000).[4] Although the court must afford the complaint a "broad[ ] and liberal[ ]" construction, "argumentative inferences in favor of the party asserting jurisdiction should not be drawn." *Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 109 (D.Conn.1999) (internal quotation marks omitted); *see Klein & Vibber, P.C. v. Collard & Roe P.C.*, 3 F.Supp.2d 167, 169 (D.Conn.1998), *aff'd*, 201 F.3d 431, 1999 WL 1295920 (2d Cir.1999).

■ The burden of proving subject matter jurisdiction rests with the plaintiff, *see Makarova*, 201 F.3d at 113, and the court may look to evidence outside the pleadings when determining if plaintiff has met its burden, *see City of New York v. FDIC*, 40 F.Supp.2d 153, 160 (S.D.N.Y.1999) (citing *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

The second standard is that set forth in Rule 56 of the Federal Rules of Civil Procedure. Despite the fact that defendant moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, it is well settled that,

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which

relief may be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed R. Civ. Pro. 12(b).

In determining whether conversion of a Rule 12(b)(6) motion into a Rule 56 motion is appropriate, "[t]he essential inquiry is whether the [plaintiff] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet the facts outside the pleadings." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (internal quotation marks omitted).

■ The court finds that it is entirely reasonable to convert defendant's motion to dismiss into a motion for summary judgment. Both parties were on sufficient notice of the possibility, and, indeed, both parties submitted additional materials to be considered by the court. Significantly, plaintiff attached several exhibits to his opposition papers, and therefore can in no instance be deemed the victim of unfair surprise. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999); *Gurary*, 190 F.3d at 43. In fact, the Second Circuit has cautioned that it

---

4. Plaintiff contends that defendant is precluded from raising questions pertaining to the court's subject matter jurisdiction by virtue of statements, arguments, or admissions defense counsel may have previously made, and because the court previously denied defendant's motion to dismiss for lack of subject matter jurisdiction on the earlier record. The law is clear, however, that lack of subject matter jurisdiction can be raised at any time. *Transatlantic Marine Claims Agency v. Ace Shipping*

*Corp.*, 109 F.3d 105, 107 (2d Cir.1997). The court's denial of defendant's earlier motion to dismiss for lack of subject matter jurisdiction has no preclusive, or res judicata, effect so as to bar the defendant from raising the issue or the court from considering it at a later stage. 2 *Moore's Federal Practice* § 12.30[2] at 7 (Matthew Bender 3d ed.2000) (citing *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir.1994)).

may be error not to convert the motion when a plaintiff submits additional evidence in response to a motion to dismiss. *See Gurary,* 190 F.3d at 43.

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The Supreme Court has stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery upon motions, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

However, "[i]f there is any evidence in the record from which a reasonable inference [can] be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Tomka v. The Seiler Corporation,* 66 F.3d 1295, 1304 (2d Cir.1995) (citing *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994)). An issue of fact must be both genuine and material; "[w]hile genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' ... materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.... A reasonably disputed, legally essential issue is both genuine and material

and must be resolved at trial." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The %'mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment. *Quarles v. General Motors Corp. (Motors Holding Div.),* 758 F.2d 839, 840 (2d Cir.1985).

## V. THE TORT CLAIMS

Plaintiff's tort claims should be analyzed with respect to the Federal Tort Claims Act. They also must be considered as tort claims brought against the FDIC pursuant to 12 U.S.C. § 1819(a) (Fourth) and 28 U.S.C. § 1331.

### A. Under the Federal Tort Claims Act

The court lacks subject matter jurisdiction over the second, third, fourth, fifth, sixth, and eleventh counts of the complaint, since these claims fall outside the Federal Tort Claims Act's waiver of sovereign immunity.[5] "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). "[A]n action against the sovereign is properly before the district court only if there was both a grant of subject matter jurisdiction and a valid waiver of sovereign immunity." *C.H. Sanders Co. v. BHAP Housing Development Fund Co.,* 903 F.2d 114, 117 (2d Cir.1990); *see also Up State Federal Credit Union v. Walker,* 198 F.3d 372, 374 (2d Cir.1999) ("It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity

---

5. Because the court lacks subject matter jurisdiction to hear these claims, the court does not render an opinion as to whether the FDIC in its corporate capacity is the proper defendant as to these claims. For the purposes of

determining the existence of subject matter jurisdiction, the court will assume the FDIC in its corporate capacity is the proper defendant because it does not change the analysis under the FTCA.

with respect to the claim asserted is a prerequisite to subject matter jurisdiction.").

The Federal Tort Claims Act ("FTCA") provides both a basis for subject matter jurisdiction and a waiver of sovereign immunity. Under 28 U.S.C. § 1346,

the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The waiver of sovereign immunity is found in 28 U.S.C. § 2674: "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674.

█ Even though Congress has given the FDIC the authority to "sue and be sued," 12 U.S.C. § 1819(a) (Fourth), "if a suit is cognizable under § 1346(b) of the FTCA, the FTCA remedy is exclusive and the federal agency cannot be sued in its own name, despite the existence of a sue and be sued clause." *Meyer*, 510 U.S. at 476, 114 S.Ct. 996 (internal quotation marks omitted); *see* 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are

cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.").

Although the FTCA waives the sovereign immunity of the United States, the waiver is strictly limited. Specifically, "[a]ny claim arising out of ... misrepresentation, deceit, or interference with contractual rights," 28 U.S.C. § 2680(h), is excepted from the jurisdictional grant of the FTCA. *See Dorking Genetics v. U.S.*, 76 F.3d 1261, 1264 (2d Cir.1996). This statutory exception to the waiver of sovereign immunity "applies to claims arising out of negligent as well as intentional misrepresentation," and "bars not only claims of negligence in the representation, but the conduct underlying the representation." *Id.* (citing *Block v. Neal*, 460 U.S. 289, 295, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983)) (internal quotation marks omitted). Thus, the court's inquiry must go beyond the label plaintiff attaches to its claims and focus on "the substance of the claim which [it] asserts." *Id.* (quoting *Lambertson v. U.S.*, 528 F.2d 441, 443 (2d Cir.), *cert denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976)) (internal quotation marks omitted).

Plaintiff argues, among other things,[6] that the FTCA does not apply to its claims, and, even if it did, § 2680(h) places its claims outside the purview of the FTCA. Both positions are contrary to well established principles of law. *Meyer* stands for the proposition that the FTCA is the exclusive remedy for tort claims cognizable under § 1346(b). *Meyer* also dictates that a *Bivens* action against the FDIC is not cognizable under § 1346(b). The tort claims asserted in the instant case are garden-variety state law tort claims

---

6. Plaintiff also seems to suggest that defendant waived its sovereign immunity by statements it made to counsel and the court, but only Congress has the power to waive the sovereign immunity of the United States.

which fall squarely within the purview of the FTCA. As stated above, the FTCA is the exclusive avenue for the assertion of such claims, regardless of the existence of a "sue and be sued" clause, and despite plaintiff's efforts to recast or relabel them.

■ Plaintiff misapprehends the effect of § 2680(h). This provision does not exclude claims from the purview of the FTCA so that their prosecution under some other statutory scheme may be facilitated; rather, it restricts the waiver of sovereign immunity in such a way that claims of the type described therein may not be brought *at all* against the government or its agencies. *See e.g., Block v. Neal,* 460 U.S. 289, 296, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) ("Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements.").

■ Plaintiff's claims of breach of the covenant of good faith and fair dealing (Second Count); breach of fiduciary duty (Third Count); fraud, intentional misrepresentation, and collusion (Fourth Count); negligent misrepresentation (Fifth Count); (6) detrimental reliance (Sixth Count); and fraud under the New Jersey Consumer Fraud Act, New Jersey Statutes Annotated § 56:8–1 *et seq.* (Eleventh Count) all fall within the reach of § 2680(h) and, therefore, must be dismissed for want of subject matter jurisdiction.

The jurisdictional bar of § 2680(h) applies to any claim in which plaintiff alleges

a breach of the "duty to use care in obtaining and communicating information upon which plaintiff may reasonably be expected to rely in the conduct of his economic affairs," because "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block v. Neal,* 460 U.S. 289, 296, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983) (internal quotation marks omitted). Thus, "if the plaintiff's causal chain depends upon the transmission of misinformation by the government, then [§ 2680(h)] applies and there is no waiver of sovereign immunity under the FTCA." *Gollehon Farming v. U.S.,* 207 F.3d 1373, 1380 (Fed.Cir.2000); *see JBP Acquisitions, LP v. U.S.,* 224 F.3d 1260, 1264 (11th Cir. 2000) ("The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information.").

Plaintiff's claims discussed above are all dependent upon the alleged transmission of misinformation from the government to plaintiff: that certain loans would be included in the package to be sold to plaintiff. Similarly, plaintiff's statutory tort claim under the law of New Jersey, construed liberally in favor of the plaintiff, is based upon the same causal chain, i.e., that the FDIC engineered an unconscionable business transaction due to the misrepresentation of the value of the package as it was eventually sold to plaintiff.[7]

---

7. The relevant provision of the New Jersey Consumer Fraud Act states, in pertinent part that

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely

upon such concealment, suppression or omission, in connection with the sale of any merchandise or real estate ... is declared to be an unlawful practice....

N.J. Stat. Ann. § 56:8–2. This statute is substantive state tort law. It does not form an independent basis for subject matter jurisdiction over the defendant, nor is it a waiver of sovereign immunity.

Plaintiff's detrimental reliance, or promissory estoppel, claim is based upon the same purported misrepresentations, and therefore must fail as well. *See Bateman v. FDIC*, 112 F.Supp.2d 89, 94 (D.Mass. 2000) ("[T]o allow [plaintiff's] estoppel claim would enable him to make an end run around the FTCA. . . . Despite the 'estoppel' label, [plaintiff's] claim is essentially for 'misrepresentation' because it is premised upon [plaintiff's] reliance upon erroneous information supplied by FDIC employees."). It does not help the plaintiff to characterize its claims as claims of interference with contractual relations, for such claims are also barred by the Federal Tort Claims Act. *FDIC v. diStefano*, 839 F.Supp. 110, 122 (D.R.I.1993).

This conclusion is further supported by the fact that plaintiff seeks to redress an economic injury incurred in a commercial setting. "Section 2680(h) precludes liability when the plaintiff suffers an economic loss as a result of a commercial decision based upon a misrepresentation consisting of either false information or a failure to provide information it had a duty to provide." *Mt. Homes, Inc. v. U.S.*, 912 F.2d 352, 356 (9th Cir.1990). The fact that counts two through six and eleven are premised upon the FDIC's putative misrepresentation about the contents of the loan package, plaintiff's alleged reliance thereon in making a business decision to engage in the transaction, and plaintiff's purely economic harm caused by such reliance brings its claims squarely within the reach of § 2680(h).

Because counts two through six and count eleven fall within the exception to the FTCA's waiver of sovereign immunity set forth in 28 U.S.C. § 2680(h), they must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). Any doubt about the FTCA's not being a proper basis for the exercise of subject

matter jurisdiction over plaintiff's tort claim is removed by the plaintiff's formal filing of a "notice of its withdrawal of the Federal Tort Claims Act as a basis for subject-matter jurisdiction in its pending suit." (Dkt.# 27).

**B. Under 12 U.S.C. § 1819(a) (Fourth)**

As mentioned, plaintiff adamantly disclaims any intention of asserting its tort claims under the FTCA. Rather, it argues it has the right to assert its tort claims directly against the FDIC under 12 U.S.C. § 1819(a) (Fourth) as federal questions "arising under" the laws of the United States. 28 U.S.C. § 1331. Plaintiff argues that the tort claims which it seeks to pursue are not cognizable under § 1346(b) of the FTCA because they are excluded from the FTCA's waiver of sovereign immunity by the operation of 28 U.S.C. § 2680(h). Because torts of this nature are not cognizable under the FTCA, the argument goes, the FTCA is not, and cannot be, plaintiff's exclusive avenue. Since such claims are not cognizable under the FTCA, plaintiff asserts, it is disingenuous to argue that the FTCA applies. If the FTCA does not apply, according to plaintiff's argument, it does not preclude, or preempt, pursuit of these claims under § 1819(a) (Fourth).

Because torts of the nature described in § 2680(h) cannot be successfully prosecuted under the FTCA does not mean that they are not "cognizable" under the FTCA, however.

The FTCA limits the type of claims that may be brought against the United States. Certain intentional torts are not actionable under the FTCA. 28 U.S.C. § 2680(h). Such torts do not fall entirely outside the ambit of the Act, however. Claims excluded under section 2680(h) are deemed to be "cognizable" under the Act through section 2679(a). . . . Section 2679 provides that the remedies provid-

ed under the FTCA are exclusive. Since the intentional torts listed in section 2680(h) can only be adjudicated through its provisions, and its provisions prohibit claims based on such torts, those claims are not actionable against the United States or its agencies.

*FDIC v. diStefano*, 839 F.Supp. 110, 121 (D.R.I.1993). "The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) ..., and the remedies provided by this title is such cases shall be exclusive." 28 U.S.C. § 2679(a).

Judge Laguex's reasoning in *diStefano* is not undermined by or inconsistent with Justice Thomas's reasoning in *Meyer*. Justice Thomas's observation that " § 2679(a) contemplates that a sue-and-be sued waiver could encompass claims not cognizable under § 1346(b) and render an agency subject to suit unconstrained by the express limitations of the FTCA," *Meyer*, 510 U.S. at 483, 114 S.Ct. 996, stands merely as a rejection of the FDIC's argument in that case that the waivers of sovereign immunity under sue-and-be-sued clauses and the FTCA inevitably were coextensive.

■ Here, in this case, where the plaintiff asserts garden variety tort claims, as opposed to the constitutional tort considered in *Meyer*, the waiver of sovereign immunity provided by 12 U.S.C. § 1819(a) (Fourth) is no broader than the waiver worked by the FTCA. Because the particular tort claims alleged by the plaintiff could not be maintained against the United States under the FTCA, they cannot be maintained against the FDIC under § 1819(a) (Fourth). The remedy provided by the FTCA—which is no remedy—is exclusive. 28 U.S.C. § 2679(a).[8]

## VI. THE BIVENS CLAIMS

Plaintiff attempts to avoid the roadblock created by the Tort Claims Act by formulating a *"Bivens"* claim. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court implied a cause of action directly against federal agents based on their alleged violations of the Fourth Amendment to the U.S. Constitution. Here, plaintiff alleges that the FDIC deprived it of property in violation of the fifth amendment and, therefore, it can sue the FDIC directly for this constitutional violation. This attempt fails as a matter of law, however. Fed. R. Civ. Pro. 12(b)(6) and 56.

■ The problem with plaintiff's *Bivens* claim is not one of subject matter jurisdiction, for a claim based on the U.S. Constitution certainly "arises under" federal law. 28 U.S.C. § 1331. Rather, the problem here is plaintiff's failure to state a claim on which relief can be granted against the FDIC. *Bivens* allows constitutional tort claims against individuals, not federal agencies. *Meyer*, 510 U.S. at 485, 114 S.Ct. 996 ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself").

## VII. THE CONTRACT CLAIMS

Defendant moves under Rules 12(b)(6) and 56 for judgment as a matter of law on the First, Second, and Third Counts[9] of

---

**8.** The plaintiff apparently reads Justice Thomas's opinion as, in effect, *broadening* suitors' rights with respect to federal agencies by allowing them to sue on claims that one would normally consider barred by 28 U.S.C.

§ 2679(a). This was not what Justice Thomas was contemplating.

**9.** Although only the First Count of the complaint is labeled a contract claim, the Second

the complaint on the grounds that named defendant in this case, the FDIC in its corporate capacity, was not a party to the contract at issue in this case. The defendant argues that plaintiff entered into the loan sale agreement with the FDIC as *Receiver* of National Industrial Bank ("FDIC–R"), and that plaintiff has mistakenly sued the FDIC in its corporate capacity ("FDIC–C"). Defendant also argues that the district court lacks subject matter jurisdiction over plaintiff's non-tort claims. Fed. R. Civ. Pro. 12(b)(1). Therefore, according to the defendant, plaintiffs contract claims must be dismissed under either Rule 12(b)(6) or Rule 12(b)(1). The court considers defendants' jurisdictional argument first.

## A. The Jurisdictional Question

■ The first count of plaintiff's complaint alleges pure breach of contract. Plaintiff is not suing to enforce a contract it had with a defunct depository, but for breach of a contract it believes it made with the FDIC, as opposed to the FDIC as receiver. This contract involved the disposition of loan obligations originally due to the failed bank, but then taken over by FDIC as receiver. Plaintiff's lawsuit names the FDIC as the sole defendant; the United States is not named as a defendant.

As a consequence of different waivers of immunity available, plaintiffs suing the FDIC have a fairly wide choice of forum, at least if they sue in contract. They may bring suit in the Court of Federal Claims, if they have a Tucker Act suit for more than $10,000; they may bring a Tucker Act suit for a lesser amount in either the Court of Federal Claims or a district court; and they may sue in any court of law or equity under the FDIC sue—and be sued clause.

*Taylor v. FDIC*, 132 F.3d 753 (D.C.Cir. 1997) (footnote omitted).

Since plaintiff seeks contract damages in excess of $10,000, it seems clear that it does not contemplate suit in the district court under the Little Tucker Act. Although a suit which does not name the United States as a defendant, but names instead a federal agency, arguably may be brought under the Tucker Act, *see, e.g., Kline v. Cisneros*, 76 F.3d 1236 (D.C.Cir. 1996), it does not fairly appear that this is what the plaintiff contemplated either, for it brought this action in the district court, rather than in the Court of Claims, and it has nowhere argued the applicability of the Tucker Act in any of its opposing papers.

This leaves the "sue-and-be-sued" provision of 12 U.S.C. § 1819(a) Fourth, and the "deemer" clause of § 1819(b)(2)(A), as bas-

and Third Counts are treated here as contract claims because they are based in part "upon an alleged failure to perform contractual obligations," i.e., the failure of the FDIC to transfer all of the assets originally contained in the loan package at the time the bids were solicited. *Davis v. U.S.*, 961 F.2d 53, 56 (5th Cir.1991); *see Woodbury v. U.S.*, 313 F.2d 291, 295–97 (9th Cir.1963) (holding that when a proposed tort claim is "based entirely upon breach by the government of a promise made by it in a contract" it should be treated as a contract claim for jurisdictional purposes). Thus, to the extent the Second and Third Counts simply restate the breach of contract claim, jurisdiction does not lie with

the FTCA, and they must be considered breach of contract claims.

Notably, however, plaintiff's Second Count goes beyond alleging a breach of the implied covenant of good faith and fair dealing and affirmatively alleges "bad faith." (Compl., ¶ 116). Similarly, in its Third Court, plaintiff alleges more than just a breach of fiduciary duty, affirmatively alleging that the FDIC acted "negligently or fraudulently." (*Id.*, ¶ 160). Therefore, to the extent such claims allege tortious conduct, exclusive jurisdiction does lie with the FTCA, which, as discussed previously, does not waive sovereign immunity under § 2680(h) for the type of conduct alleged in the complaint.

es for a waiver of sovereign immunity and subject matter jurisdiction over plaintiff's contract claims. That plaintiff intended to proceed on these bases seems clear from its reference to § 1819, and 28 U.S.C. § 1331 governing cases arising under federal law. *See FDIC v. Hartford Ins. Co. of Illinois*, 877 F.2d 590, 592 (7th Cir.1989). The court does not consider plaintiff's claims in light of FIRREA, since the plaintiff has repeatedly and unequivocally stated that "FIRREA is inapplicable in the case at bar." (Dkt. # 127 at 5).

## B. The Capacities Question

■ It is not disputed that the FDIC operates throughout the country in two capacities. The named defendant in this case is the Federal Deposit Insurance Corporation, the agency of the United States that operates as regulator and corporate insurer of depository institutions. The body of that agency which operates as an appointed receiver of a failed depository institution is referred to as the receiver. *See* 12 U.S.C. § 1819, § 1821(c). As the corporate entity, its "primary responsibility is to insure bank deposits and pay depositors when an insured bank fails.... Consequently, it administers the federal deposit insurance fund, a pool of assets used to guarantee the safety of federally insured deposits." *Bullion Services, Inc. v. Valley State Bank*, 50 F.3d 705, 708 (9th Cir.1995) (citations omitted). "FDIC Receiver, on the other hand, acts as a receiver for an insolvent state bank possessing all the rights, powers, and privileges granted by State law to a receiver of a State bank." *Id.* (internal quotation marks omitted).

Although the paths of the two entities cross often, the law treats them as distinct. Any "wrongful conduct attributed to the FDIC as corporation cannot be attributed to the FDIC as receiver." *FDIC v. Bernstein*, 944 F.2d 101, 106 (2d. Cir.1991). "Created by Congress to promot[e] the stability of and confidence in the nation's banking system, the FDIC is authorized by statute to function in two separate and distinct capacities." *Id.* (internal quotations omitted); *Gunter v. Hutcheson*, 674 F.2d 862, 870 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *see also Dababneh v. Federal Deposit Ins. Corp.*, 971 F.2d 428, 432 (10th Cir.1992). Accordingly, "[b]ecause they are discrete legal entities, Corporate FDIC is not liable for wrongdoings by Receiver FDIC," *Bernstein*, 944 F.2d at 106, and the "FDIC–C may not be held directly liable for the actions of FDIC–R," *Dababneh*, 971 F.2d at 432. *See also U.S. v. Schroeder*, 86 F.3d 114, 117 (8th Cir. 1996) ("Under the 'separate capacities' doctrine, it is well established that the [FDIC], when acting in one capacity, is not liable for claims against the [FDIC] acting in one of its other capacities."); *FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1109 (1st Cir.1986) (refusing to address fraud claims asserted against FDIC in its corporate capacity because it "is not liable for wrongdoings" by FDIC as receiver).[10]

---

10. That the FDIC as Receiver is different from the FDIC in its corporate capacity was also recently discussed by the district court in Texas:

[t]he FDIC functions in two distinct capacities, as a regulator and corporate insurer of depository institutions and as an appointed receiver of failed depository institutions. 12 U.S.C. §§ 1819, 1821(c) (West 1989 & Pamphlet 1999). In its corporate capacity, the FDIC functions as a separate entity from its receivership capacity, and if the FDIC is named as a party in an erroneous capacity, then never the twain capacities shall meet. See *Bullion Servs. v. Valley State Bank*, 50 F.3d 705 (9th Cir.1995) (naming FDIC Receiver as respondent does not simultaneously create respondent status for FDIC Corporate, rather, FDIC Corporate must be specifically named and made a

The authority cited by plaintiff does not detract from this. In *FDIC v. Godshall,* 558 F.2d 220 (4th Cir.1977), the court held that FDIC–C was the proper plaintiff, and the district court had subject matter jurisdiction as a result, in an action to enforce a note because FDIC–C, and not FDIC–R, was the holder of the note. Similarly, in *First Western Federal ·Savings Bank v. FDIC,* 678 F.Supp. 224 (D.S.D.1988), the court held that, according to the four corners of the asset purchase agreement itself, the FDIC–C, and not the FDIC–R, was the proper defendant because FDIC–C was a named party to the agreement.

When viewed as a whole, these cases actually support the ·conclusion that one who is suing the FDIC must take care to name the correct party; they in no way suggest that the court can arbitrarily substitute the FDIC–C for the FDIC–R. *See Schroeder,* 86 F.3d at 117 (holding that defendant could not assert a claim of set-off against the RTC in its corporate capacity when the claims was based upon a contract with the RTC as receiver).

Plaintiff does not dispute that the "FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of National Industrial Bank" was the named seller in the Loan Sale Agreement for package number SB–93–21(C). (Kathleen Bowen Aff., Dkt. # 111, ¶ 4 and Ex. 1, Att. 2 at 18A, Att. 5 at 23 (hereinafter "Loan Sale Agreement")). Plaintiff is thereby con-. fronted with the principle that "a contract cannot bind a non-party." *International Customs Associates v. Ford Motor Co.,* 893 F.Supp. 1251, 1255 (S.D.N.Y.1995), *aff'd,*

201 F.3d 431, 1999 WL 1314724 (2d Cir. 1999), *cert. denied,* 530 U.S. 1264, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000) (citing *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir.1985)).

Apparently cognizant of this principle, plaintiff argues that FDIC–C is a party to the contract and seeks to introduce parol evidence in an effort to, in effect, include the FDIC–C as a party, as if it were named therein. The parol evidence rule is a rule of substantive law, which states that

> [w]hen two parties have made a contract and. have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Lentz v. Mason,* 32 F.Supp.2d 733, 749 (D.N.J.1999) (citing *Filmlife, Inc. v. Mal "Z" Ena, Inc.,* 251 N.J.Super. 570, 573, 598 A.2d 1234 (1991)); *see generally* 58 N.Y. Jur.2d *Evidence and Witnesses* § 555 (1986) ("Briefly stated in terms of the result of the application of the rule, a valid instrument clear in its terms and purporting to express the entire agreement of the parties cannot be contradicted, varied, or explained by what was communicated between the parties either prior to or at the time of the execution of the instrument.").

 Thus, oral evidence supplementing the terms of the writing may· be admitted in two situations: first, where the writing is not intended to be a complete inte-

party); *Federal Deposit Ins. Corp. v. Condit,* 861 F.2d 853 (5th Cir.1988) (after granting FDIC Corporate's motion to substitute FDIC Corporate for FDIC Receiver as the sole adverse party in the action, court's refusal to later allow plaintiff to amend and add FDIC Receiver resulted in plaintiff's inability to maintain a suit against FDIC as Receiver); *Trigo v. FDIC,* 847 F.2d 1499 (11th Cir.1988) (holding that "federal law protects the FDIC in its corporate capacity from liability under contracts purchased from the FDIC as receiver").

*Perry Williams, Inc. v. FDIC,* 47 F.Supp.2d 804, 808 (N.D.Tex.1999).

gration of all the terms and conditions of the agreement between the parties; and, second, where the oral evidence sought to be admitted does not contradict the written terms set forth in the agreement. *See id.*

Upon examination of the contract itself, and the accompanying evidence, the court finds that the Loan Sale Agreement is a complete integration, and that substitution of FDIC–C as a party would directly contradict the express terms of the agreement. That contract itself is lengthy and comprehensive, and also contains a merger clause, (*see* Loan Sale Agreement, ¶ 33 at 17). The Loan Sale Agreement for SB–93–21(C) further identifies the seller in this case as the Federal Deposit Insurance Corporation *in its receivership capacity*, (*see* Loan Sale Agreement, Att. 2 at 18A, Att. 5 at 23).

Parol evidence may not be used to show that FDIC as receiver was not the party with which plaintiff contracted. Because FDIC–C and FDIC–R are legally distinct entities, the court is not free to treat them as interchangeable. This may be inconvenient and disappointing to the plaintiff, but the distinction between the two entities is not inconsequential. Therefore, judgment as a matter of law should issue in the FDIC's favor on plaintiff's contractual claims. The alleged contract on which plaintiff sues is between it and the FDIC as receiver.

Plaintiff's predicament is not helped by its argument that it is the victim of a "scheme." The "evidence" which plaintiff has unearthed regarding defendant's having sold *other* loan obligations, and having entered into sales agreements with *other* purchasers does not change the fact that, according to the record evidence, plaintiff's contract in this case—if there was a contract at all—was with the FDIC in its capacity as the Receiver for the failed bank. The documents do not "confirm the existence of a scheme" or otherwise show that the instant agreement was a "sham and a fraud." (Dkt. # 121 at 14).

Plaintiff's real complaint is that the FDIC deceived and misled it. These are tort claims, and they are barred by § 2680(h). Plaintiff tries to escape this conclusion by arguing that the FDIC is the party with which it contracted and that, to defeat its claim the FDIC has fraudulently inserted into the contract the language which identifies the FDIC only "in its receivership capacity." The FTCA cannot be circumvented so easily.

### C. Plaintiff's Contract Claims

On November 29, 1999, the FDIC filed the Rule 12(b)(1) and (6) motion now under discussion. The motion referred to matters outside the pleading, thus making it convertible to a motion under Rule 56. The plaintiff has had a full and fair opportunity to oppose that motion in a way that is contemplated and required by Rule 56(e) and the Local Rules, in particular Local Rule 9(c)(2). Fed. R. Civ. Pro. 56(e); D. Conn. L.R. 9(c)(2). More specifically, Mill Creek has had ample opportunity to place before the court *evidence* of a contract between it and the named defendant. It has not done so.

The evidence before the court indicates that the September 13, 1993, agreement for the sale of SB–93–21(C) was between Mill Creek and the FDIC as receiver for the National Industrial Bank. (Loan Sale Agreement, Att. 2 at 18A, Att. 5 at 23). That Agreement identifies the FDIC as Receiver as the "Seller." (*Id.*). It also states that the sale was "without recourse" and that the seller did not "represent, warrant or insure the accuracy or completeness of any information...." (Loan Sale Agreement, ¶ 14 at 10). Finally, the agreement states that it "supersedes any

and all prior discussions and disagreements" and that it constitutes "the sole and entire understanding" with regard to SB–93–21(C). (Loan Sale Agreement, ¶ 33 at 17).

Plaintiff's affiant, and President, testified at his deposition that when he signed the instant contract with the FDIC as Receiver at the September 13, 1993, closing, he did not read it. As he testified:

Q. Well, did you read the agreement on September 13th?

A. No, I certainly did not go through it. I assumed it was the same agreement I had received before....

A. ... I mean, you know how settlements Go, okay. They're signing documents. See, nobody—what I am telling you is nobody said, "This is a new document that we're adding to this contract now. Take a look at this before you sign this," all right.

Q. Was [previous counsel] representing you or did you go alone?

A. I think he was there, but I don't know.

(Anthony Lame Dep. at 161–62). In these circumstances, Mr. Lame is not competent to testify that the FDIC as Receiver was not the party with whom Mill Creek contracted. Nor is he competent to say that the identification of the seller as the FDIC as Receiver was a mistake by the defendant FDIC, or done as part of some artifice or scheme to defraud. Plaintiff contracted with, as the contract states on its face, the FDIC as Receiver of the National Industrial Bank.

■ The plaintiff cannot overcome this by denegrating the FDIC, making unsupported arguments of fraud and misrepresentation, and assertions that parol evidence will show that the FDIC was the party with whom it had contracted. (*See* Dkt. # s 121, 127). Plaintiff cannot refute the express language of the contract naming the FDIC as Receiver the seller of the loan obligations because it is barred by the parol evidence rule from introducing extrinsic evidence that contradicts this express language. There has been no showing that equitable considerations require a reformation of the agreement to substitute the named defendant for the FDIC as Receiver.

■ "Parties are generally free to contract as they desire and, absent mistake, fraud, duress, unconscionability, or illegality, parties are bound by the unambiguous terms of their contract." *Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc.*, 913 F.Supp. 837, 842 (D.N.J.1995). Here, there is no mutual mistake, so plaintiff must demonstrate that, because of unilateral mistake on his part, it entered into an agreement that is essentially a fraud, and that equity should not enforce. Specifically, plaintiff must show by "clear an convincing" evidence,[11] *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F.Supp. 474, 485 (D.N.J.1995), that:

(1) the mistake was so great that to enforce the agreement would be unconscionable; (2) the mistake must relate to a material feature of the contract; (3) the plaintiff[ ] exercised reasonable care; and (4) the relief afforded must not seriously prejudice the opposing party.

*Alexander v. CIGNA Corp.*, 991 F.Supp. 427, 442 (D.N.J.1998).

---

11. This evidentiary standard applies to the instant motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[I]n a ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").

The court expresses no opinion here regarding the second and fourth elements, but finds that plaintiff has come forth with no evidence to satisfy the first and third elements. Enforcing the agreement as written is far from unconscionable, the plaintiff having nearly doubled its investment in the loan package. Arguably, the only consequence of enforcing the contract as written would be to preclude plaintiff from further attempting to satisfy its speculative expectation interest from the public fisc. This is not unconscionable.

The contract is not the product of lopsided negotiations. Its terms are not patently unfavorable to plaintiff. The only claimed unfairness is that plaintiff cannot collect additional monies from the defendant FDIC. Plaintiff's failure to read the contract certainly contributes to this. "Mere failure to read an instrument, thus giving rise to plaintiff's unilateral mistake, is insufficient to obtain relief." *Thomas v. Trans World Airlines*, 457 F.2d 1053, 1056 (3d Cir.1972); *cf. Fleming*, 913 F.Supp. at 843 ("[I]t is well settled that affixing a signature to a contract creates a conclusive presumption that the signer read, understood, and assented to its terms.").

The plaintiff's breach of contract claim is against the FDIC as receiver, not against the FDIC in its corporate capacity, which it has named.

## VIII. CONCLUSION

Plaintiff has not presented any facts or evidence in support of its claim against FDIC that would entitle it to relief.[12] The defendant's motion to dismiss the Second, Third, Fourth, Fifth, Sixth, and Eleventh Counts of the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure was properly granted; defendant's motion for summary judgment on the First, Second and Third,[13] and Seventh Counts of the complaint was also properly granted. The court declines to set aside its earlier ruling, and offers the foregoing as additional reasons supporting it decision.

---

**12.** *See* Fed. R. Civ. Pro. 56(e); D. Conn. L.R. 9(c)(2).

**13.** To the extent the court has subject matter jurisdiction over the Second and Third Counts, such counts fail to state a claim as a matter of law. Fed. R. Civ. Pro. 56(c).